**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JENNY SILVA, Individually and on Behalf of All Others Similarly Situated, and Derivatively on Behalf of THE HAIN CELESTIAL GROUP, INC., | X : : : : | Case No. |
| Plaintiff, | : : | VERIFIED STOCKHOLDER CLASS AND DERIVATIVE COMPLAINT FOR |
| v. | : : | DECLARTORY RELIEF, VIOLATION OF SECURITIES LAW, BREACH OF |
| IRWIN D. SIMON, PASQUALE CONTE, ANDREW R. HEYER, ROGER MELTZER, LAWRENCE S. ZILAVY, RICHARD C. BERKE, SCOTT M. O'NEIL, ADRIANNE SHAPIRA, and RAYMOND W. KELLY, | : : : : : : | FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT |
| Defendants, | : : | |
| -and- | : : | |
| THE HAIN CELESTIAL GROUP, INC., a Delaware corporation, | : : : | |
| Nominal Defendant. | : : | |
| | X | <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Jenny Silva, by her undersigned counsel, submits this Verified Stockholder Class and Derivative Complaint on behalf of nominal defendant The Hain Celestial Group, Inc., ("Hain Celestial" or the "Company") against the defendants named herein. Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to plaintiff which are based on personal knowledge. This complaint is also based on the investigation of plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## SUMMARY OF THE ACTION

1.      This is a stockholder class and derivative action brought by plaintiff on behalf of Hain Celestial against certain of its officers and directors for breaches of fiduciary duties, waste of corporate assets, and unjust enrichment and other violations of law at the expense of the Company. These wrongs have resulted in hundreds of millions of dollars to Hain Celestial and other damages, such as to its reputation and goodwill.

2.      Hain Celestial manufactures, markets, distributes, and sells organic and natural products in the United States, the United Kingdom, Canada, and Europe. This action concerns the harm caused to the Company by the defendants due to their responsibility for a series of improper statements concerning Hain Celestial's business and financial health. Specifically, the defendants, Hain Celestial's directors and officers, made, approved, and certified improper financial statements contained within Hain Celestial's press releases and filings with the SEC. In those public statements and SEC filings, the defendants continually discussed that revenue recognition and sales and promotion incentives were "*critical*" aspects of the Company's accounting process, which Hain Celestial accounted for correctly, and that the Company had

strong and effective internal controls. As Hain Celestial was forced to later admit, however, these statements were woefully inaccurate when made. In making and causing the Company to issue the improper financial statements, while also implementing inadequate internal controls at the Company, these defendants breached their fiduciary duties owed to the Company and its stockholders.

3. On August 15, 2016, after months of improper statements concerning the Company's financial condition and business prospects, Hain Celestial issued a press release disclosing that it could not timely file its fourth quarter and 2016 fiscal year financial results. In particular, the Company explained: "During the fourth quarter, the Company identified concessions that were granted to certain distributors in the United States. The Company is currently evaluating whether the revenue associated with those concessions was accounted for in the correct period and is also currently evaluating its internal control over financial reporting." In addition, Hain Celestial admitted that it would not achieve its previously reported financial guidance for the 2016 fiscal year.

4. The response to the Company's disclosures was swift and severe. Its stock price fell 26.3%, erasing $1.4 billion in market capitalization. Further, Hain Celestial and certain of its officers and directors are now the subjects of at least two class action complaints in the U.S. District Court for the Eastern District of New York, alleging violations of federal securities laws (the "Securities Class Actions").

5. Further, the scope of wrongdoing has significantly expanded, and currently is undefined. While the Company initially focused on the timing of the recognition of the revenue associated with the concessions granted to certain distributors, the scope of its review has since

expanded "to perform an analysis of previously-issued financial information in order to identify and assess any potential errors, which is ongoing."

6.　　　While Hain Celestial told the SEC that it would file its corrected financial statements by February 27, 2017, it was unable to meet that deadline. In fact, despite eight months passing, the Company still has not filed its annual report for the 2016 fiscal year and is now late on two additional quarterly filings.

7.　　　Further, the Company has not held an Annual Meeting of Stockholders since November 19, 2016, sixteen months ago. Defendants' failure to hold such a meeting is in violation of title 8, section 211 of the Delaware General Corporation Law Code and the Company's Bylaws. As a result, the Company's stockholders have not received updates directly from Hain Celestial's Board of Directors (the "Board") and they have been unable to voice their frustrations at an annual meeting or by withholding their votes for these faithless fiduciaries.

8.　　　The Board's refusal to hold such a meeting is unsurprising. At the Company's last annual meeting, over twenty-seven million shares withheld their votes for defendants Scott M. O'Neil ("O'Neil"), Richard C. Berke ("Berke"), and Adrianne Shapira ("Shapira"), over one-third of the available votes. Even that vote, however, was tainted. The proxy solicitation requesting stockholder vote in favor of defendants O'Neil, Berke, Shapira, Irwin D. Simon ("Simon"), Andrew R. Heyer ("Heyer"), Roger Meltzer ("Meltzer"), Raymond W. Kelly ("Kelly"), and Lawrence S. Zilavy ("Zilavy") to the Board contained materially false and misleading statements about the Board's oversight of risk and the Company and its operating plan. If the stockholders knew the truth about Hain Celestial's continued lack of internal control failures and revenue recognition improprieties, stockholders would not have voted to reelect the faithless fiduciaries that failed to exercise oversight of the Company.

9.    Plaintiff brings this action to hold the Individual Defendants accountable for their wrongdoing, force the annual stockholder meeting, and correct the other wrongs these defendants wrought.

## JURISDICTION AND VENUE

10.    Pursuant to 28 U.S.C. §1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), this Court has jurisdiction over the claims asserted herein for violations of section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder. This Court has supplemented jurisdiction over the remaining claims under 28 U.S.C. §1367.

11.    This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a) in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

12.    This also Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

13.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because: (i) Hain Celestial maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Hain Celestial, occurred in this District; and (iv) defendants

have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

**Plaintiffs**

14.     Plaintiff Jenny Silva was a stockholder of Hain Celestial at the time of the wrongdoing complained of herein, has continuously held stock since that time, and is a current Hain Celestial stockholder.  Plaintiff is a citizen of California.

**Nominal Defendant**

15.     Nominal defendant Hain Celestial is a Delaware corporation with principal executive offices located at 1111 Marcus Avenue, Lake Success, New York.  Accordingly, Hain Celestial is a citizen of Delaware and New York.  Hain Celestial manufactures, markets, distributes, and sells organic and natural products under brand names which are sold as "better-for-you" products. The Company's operations are managed in five operating segments which are integrated under one management team and employ uniform marketing, sales, and distribution programs.  Hain Celestial's products are categorized into the five business segments of snacks, tea, grocery, personal care, and poultry.  The Company's products can be found in over seventy countries across six continents.  As of June 30, 2015, Hain Celestial employed a total of 6,307 full time employees.

**Defendants**

16.     Defendant Simon is Hain Celestial's President, Chief Executive Officer, and a director and has been since May 1993, and Chairman of the Board and has been since April 2000.  Defendant Simon founded Hain Celestial in May 1993.  Defendant Simon is named as a defendant in the related Securities Class Actions that allege he violated sections 10(b) and 20(a)

of the Exchange Act. Defendant Simon knowingly, recklessly, or with gross negligence: (i) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; and (ii) failed to maintain adequate internal controls with respect to Hain Celestial's financial reporting. Hain Celestial paid defendant Simon the following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|--------------|---------------------------------------|------------------------|-------|
| 2015 | $1,850,000 | $8,787,355 | $5,565,725 | $107,560 | $16,310,640 |

Defendant Simon is a citizen of New York.

17. Defendant Pasquale Conte ("Conte") is Hain Celestial's Executive Vice President and Chief Financial Officer has been since September 2015. Defendant Conte was also Hain Celestial's Senior Vice President, Finance from October 2014 to September 2015, Treasurer from July 2009 to September 2015, and Vice President from July 2009 to October 2014. Defendant Conte is named as a defendant in the related Securities Class Actions that allege he violated sections 10(b) and 20(a) of the Exchange Act. Defendant Conte knowingly, recklessly, or with gross negligence: (i) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; and (ii) failed to maintain adequate internal controls with respect to Hain Celestial's financial reporting. Defendant Conte is a citizen of New York.

18. Defendant Heyer is a Hain Celestial director and has been since November 2012. Defendant Heyer was also a Hain Celestial director from November 1993 to November 2009. Defendant Heyer is the Chairman of Hain Celestial's Audit Committee and a member of that committee and has been since at least October 2014. Defendant Heyer knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the

several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance. Hain Celestial paid defendant Heyer the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2015 | $63,000 | $175,131 | $238,131 |

Defendant Heyer is a citizen of New York.

19.     Defendant Meltzer is a Hain Celestial director and has been since December 2000. Defendant Meltzer knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance. Hain Celestial paid defendant Meltzer the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2015 | $53,000 | $175,131 | $228,131 |

Defendant Meltzer is a citizen of New York.

20.     Defendant Zilavy is a Hain Celestial director and has been since November 2002. Defendant Zilavy is a member of Hain Celestial's Audit Committee and has been since at least November 2002. Defendant Zilavy knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly

account for the several factors negatively impacting the Company's performance. Hain Celestial paid defendant Zilavy the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2015 | $58,000 | $175,131 | $233,131 |

Defendant Zilavy is a citizen of New York.

21.     Defendant Berke is a Hain Celestial director and has been since April 2007. Defendant Berke is a member of Hain Celestial's Audit Committee and has been since at least February 2017. Defendant Berke knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance. Hain Celestial paid defendant Berke the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2015 | $53,000 | $175,131 | $228,131 |

Defendant Berke is a citizen of New York.

22.     Defendant O'Neil is a Hain Celestial director and has been since January 2012. Defendant O'Neil knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance. Hain Celestial paid defendant O'Neil the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|

| | 2015 | $63,000 | $175,131 | $238,131 | |

Defendant O'Neil is a citizen of Pennsylvania.

23.     Defendant Shapira is a Hain Celestial director and has been since November 2014.  Defendant Shapira was a member of Hain Celestial's Audit Committee in at least October 2015.  Defendant Shapira knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance.  Hain Celestial paid defendant Shapira the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2015 | $26,500 | $175,131 | $201,631 |

Defendant Shapira is a citizen of New York.

24.     Defendant Raymond W. Kelly ("Kelly") is a Hain Celestial director and has been since August 2015.  Defendant Kelly knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance.  Defendant Kelly is a citizen of New York.

25.     The defendants identified in ¶¶16-17 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶16, 18-24 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶18, 20-21, 23 are referred to herein as the "Audit Committee Defendants."  Collectively, the defendants identified in ¶¶16-24 are referred to herein

as the "Individual Defendants."

<h2 align="center">DUTIES OF THE INDIVIDUAL DEFENDANTS</h2>

**Fiduciary Duties of the Individual Defendants**

26.     By reason of their positions as officers, directors, and/or fiduciaries of Hain Celestial and because of their ability to control the business and corporate affairs of Hain Celestial, the Individual Defendants owed Hain Celestial and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Hain Celestial in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Hain Celestial and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

27.     Each director and officer of the Company owes to Hain Celestial and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

**Additional Duties of the Audit Committee Defendants**

28.     The Audit Committee Defendants owed specific duties to Hain Celestial to review and approve quarterly and annual financial statements, earnings press releases, and Hain Celestial's internal controls over financial reporting.  According to the Audit Committee's Charter,

"[t]he primary purpose of the Audit Committee is to assist the Board of Directors' oversight of (1) the integrity of the Company's financial statements, (2) the independent auditor's qualifications, independence, and performance, and (3) the performance of the Company's internal controls and procedures."  The Audit Committee Charter specifies other purposes for the Audit Committee including, "prepar[ing] an Audit Committee report, as required by the rules and regulations of the SEC, to be included in the Company's annual proxy statement," and "assist[ing] the Board of Directors in overseeing management's fulfillment of its responsibilities in the financial reporting process of the Company."

29.     The "Powers and Responsibilities" of the Audit Committee include "Oversight of the Company's Financial Statements and Disclosure Practices." Specifically, the Audit Committee is required to:

1)     Discuss with management and the independent auditor the Company's annual audited financial statements, including the Company's disclosures made under "Management's Discussion and Analysis of Financial Condition and Results of Operations," and  recommend to the Board of Directors whether such audited financial statements should be included in the Company's annual report on Form 10-K.

2)     Discuss with management and the independent auditor the Company's quarterly financial statements, including the Company's disclosures made under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

3)     Review the Company's disclosure controls and procedures, internal controls and procedures for financial reporting, and the certifications required to be made by any officer of the Company in each of the Company's quarterly reports on Form 10-Q and the Company's annual report on Form 10-K (the "*Periodic Reports*").

4)     Prepare the annual report referred to under "Purpose" above.

5)     Review all reports from the independent auditor pursuant to applicable laws, rules and regulations concerning:

a)        all critical accounting policies and practices to be used;

b) all alternative treatments of financial information within generally accepted accounting principles that have been discussed with management, ramifications of the use of such alternative disclosures and treatments, and the treatment preferred by the independent auditor; and

c) other material written communications between the independent auditor and management, such as any management letter or schedule of unadjusted differences.

6) Discuss with the independent auditor any other matters required to be discussed by Public Company Accounting Oversight Board ("*PCAOB*") Auditing Standards No. 16, including, without limitation:

a) significant unusual transactions not in the ordinary course of business or that otherwise appear to be unusual and the auditor's understanding of the business rationale for those transactions;

b) the auditor's evaluation of the quality of the Company's financial reporting;

\* \* \*

7) Discuss generally with management the types of information to be disclosed and presentations to be made in connection with the Company's (a) issuance of earnings press releases (including the Company's use of "pro forma" or "adjusted" non-GAAP financial information) and (b) disclosure of financial information, earnings releases, and earnings guidance to analysts and rating agencies. The Audit Committee need not discuss in advance each earnings release or each instance in which the Company may provide earnings guidance.

8) Discuss the Company's policies and guidelines which govern the Company's risk assessment and risk management efforts as well as discuss the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures.

9) Review and discuss with management and the independent auditor, as it deems necessary or appropriate:

a) major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, major issues as to the adequacy of the Company's internal controls, and any special audit steps adopted in light of material control deficiencies;

b)      analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the Company's financial statements; and

c)      the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the Company's financial statements.

10)      Review disclosures made to the Audit Committee by the Company's Chief Executive Officer and Chief Financial Officer during their certification process for the Periodic Reports about any significant deficiencies in the design or operation of internal controls or material weaknesses therein and any fraud involving management or other employees who have a significant role in the Company's internal controls.

30.      The Audit Committee Charter also states that the Audit Committee will conduct

"Oversight of the Company's Independent Auditor," including:

1)      Obtain and review a report from the independent auditor on at least an annual basis describing:

a)      the internal quality-control procedures of such independent auditor;

b)      any material issues raised by the independent auditor's most recent internal quality-control review or peer review and any steps taken to deal with such issues; and

c)      any material issues raised by any inquiry or investigation by governmental or professional authorities, within the preceding five years, with respect to one or more independent audits carried out by the independent auditor and any steps taken to address such issues.

* * *

7)      Review and discuss with the independent auditor

a)      the auditor's responsibilities under generally accepted auditing standards and the responsibilities of management in the audit process;

b)      the overall audit strategy;

c)      the proposed plan and overall scope and timing of the Company's annual audit;

    d)      any significant risks identified during the auditor's risk assessment procedures; and

    e)      when completed, the results, including significant findings, of the annual audit.

31.    In addition, the Audit Committee Charter states that the Audit Committee shall:

1)    Obtain assurance from the independent auditor that the Company is in compliance with the provisions of Section 10A of the Securities Exchange Act of 1934, as amended.

2)    Review with management, the independent auditor, and the Company's counsel any legal, regulatory, and environmental matters that may have a material impact on the Company's financial statements or accounting policies.

3)    Establish procedures for the (a) receipt, retention, and treatment of complaints received by the Company regarding the Company's accounting, internal accounting controls or auditing matters and (b) confidential, anonymous submission by Company employees of concerns regarding questionable accounting or auditing matters.

4)    Review and approve all related-party transactions in accordance with the Company's Related Party Transactions Policy and Procedures.

5)    Review issues that arise with respect to the Company's legal and regulatory compliance.

**Control, Access, and Authority**

32.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Hain Celestial, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

33.    Because of their advisory, executive, managerial, and directorial positions with Hain Celestial, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of Hain Celestial,

including information regarding the several factors negatively impacting the Company's performance.

34.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Hain Celestial, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

35.    To discharge their duties, the officers and directors of Hain Celestial were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Hain Celestial were required to, among other things:

(a)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results;

(d)    remain informed as to how Hain Celestial conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

**Breaches of Duties**

36.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its stockholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Hain Celestial, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its stockholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the Individual Defendants who were also officers and/or directors of the Company have been ratified by the remaining Individual Defendants who collectively comprised all of Hain Celestial's Board.

37.     The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to misrepresent its financial results and, in particular, the several factors negatively impacting the Company's performance, as detailed herein, and by failing to prevent the Individual Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct, the Company is now the subject of the Securities Class Actions that allege violations of securities laws.   As a result, Hain Celestial has expended, and will continue to expend, significant sums of money.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

38.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

39.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly accounting for its revenue; (ii) enhance the Individual Defendants' executive and directorial positions at Hain Celestial and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions; and (iii) deceive the investing public, including stockholders of Hain Celestial, regarding the Individual Defendants' management of Hain Celestial's operations and the Company's financial results that had been misrepresented by defendants.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

40.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  During this time, the Individual Defendants caused the Company to issue improper financial results based upon the failure to disclose the several factors negatively impacting the Company's performance.

41.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust

enrichment; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

42.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

43.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## IMPROPER FINANCIAL STATEMENTS

44.     Hain Celestial manufactures, markets, distributes, and sells organic and natural products in the United States, the United Kingdom, Canada, and Europe.  The Company sells its products through specialty and natural food distributors, supermarkets, natural food stores, mass-market, and e-commerce retailers, food services channels and clubs, and drug and convenience stores.

45.     For approximately a year, the Individual Defendants made repeated improper statements about the Company's "critical" accounting practices and its internal controls.  In particular, the Individual Defendants' improper statements began on August 21, 2015, when Hain

Celestial filed its Annual Report on Form 10-K for the fiscal year ended June 30, 2015, with the SEC (the "2015 Form 10-K"). Defendants Simon, Heyer, Shapira, Berke, Kelly, Meltzer, O'Neil, and Zilavy all signed the 2015 Form 10-K.

46. The 2015 Form 10-K includes a number of assurances that the Company was in compliance with both internal and external rules and regulations regarding financial reporting and disclosure. In the 2015 Form 10-K, defendants Simon, Heyer, Shapira, Berke, Kelly, Meltzer, O'Neil, and Zilavy claimed that the Company's internal control over financial reporting and disclosure controls and procedures were effective. These defendants explained that, as standard procedure, revenues were recognized as net of sales incentives and concessions. As stated in the 2015 Form 10-K, "Sales are reported net of sales and promotion incentives, which include trade discounts and promotions and certain coupon costs." The 2015 Form 10-K further states, "Sales incentives and promotions include price discounts, slotting fees and coupons and are used to support sales of the Company's products. These incentives are deducted from our gross sales to determine reported net sales." Moreover, defendants Simon, Heyer, Shapira, Berke, Kelly, Meltzer, O'Neil, and Zilavy acknowledged policies pertaining to revenue recognition and sales and promotion incentives as "***critical***" aspects of the Company's accounting process, thus acknowledging that any concessions granted to distributors must be accurately accounted for because of their consequential impact on reported revenue. In addition to confirming that the "financial statements are prepared in accordance with accounting principles generally accepted in the United States ("U.S. GAAP")," defendant Simon also guaranteed the accuracy of the 2015 Form 10-K by certifying its contents in full compliance with the Sarbanes-Oxley Act of 2002 ("SOX").

47.     Despite defendants Simon, Heyer, Shapira, Berke, Kelly, Meltzer, O'Neil, and Zilavy explaining how revenue is recognized for promotion incentives and attesting to the accuracy and compliance of the Company's financial statements, the 2015 Form 10-K incorrectly accounted for concessions granted to certain distributors.

48.     Shortly after these filings, on November 5, 2015, the Company issued a press release and filed a Current Report on Form 8-K with the SEC proclaiming "Record first quarter net sales of $687.2 million, a 9% increase over the prior year period…."  For this quarter, ended September 30, 2015, Hain Celestial reported a net income of $31.3 million, or $0.30 per diluted share, on revenue of $687.2 million.  In comparing these numbers to the Company's previous year net income of $18.86 million, or $0.19 per diluted share, on revenue of $631.2 million, the Company claimed to have a 67% increase in net income from a mere 9% increase in net sales. The United States segment contributed over 50% of Company's revenue, $331 million. Defendant Simon celebrated the Company's first quarter financial results in the press release by stating, "We began fiscal year 2016 with record first quarter net sales and earnings growth." Defendant Simon attributed this success to "the diversification of our business across our branded organic and natural product categories, sales channels and geographies, which fueled solid worldwide results in our typically lowest sales and profitability quarter."

49.     The press release also presented the Company's annual guidance for fiscal year 2016 which proposed an increase of 10% to 15% in total net sales from fiscal year 2015 at a predicted range of $2.97 billion to $3.11 billion.  The report indicates an earnings range of $2.11 to $2.26 per diluted share which is an increase of 12% to 20% over fiscal year 2015.

50.     Hain Celestial repeated these promising financial results in its Quarterly Report on Form 10-Q for the quarter ended September 30, 2015, filed with the SEC on November 9,

2015. Defendants Simon and Conte signed and certified the financial report as pursuant to SOX, stating that the financial information enclosed in the Form 10-Q is accurate. The report additionally confirmed the effectiveness of the Company's disclosure controls and procedures as well as outlined any changes in internal control over financial reporting, stating:

**Evaluation of Disclosure Controls and Procedures**

Our Chief Executive Officer and Chief Financial Officer have reviewed our disclosure controls and procedures as of the end of the period covered by this report. Based upon this review, these officers concluded that, as of the end of the period covered by this report, our disclosure controls and procedures are effective to ensure that information required to be disclosed by the Company in the reports it files or submits under the Exchange Act is (1) recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and forms and (2) accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

**Changes in Internal Control over Financial Reporting**

During the first quarter of fiscal 2016, the Company implemented the Hyperion Financial Management system for consolidation and financial reporting resulting in changes to our processes and related internal controls over financial reporting. We expect this new reporting tool will enhance our internal control over financial reporting. Pre-implementation testing and post-implementation reviews were conducted by management to ensure that controls surrounding the system implementation process, the reporting tool, and the closing process were effective to prevent material financial statement errors. Other than changes related to this new reporting tool, no other changes in our internal control over financial reporting occurred during the period covered by this quarterly report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

51. On February 1, 2016, Hain Celestial issued a press release and filed a Current Report on Form 8-K with the SEC that again announced record results for the quarter ended December 31, 2015. The Form 8-K touted "Record net sales of $752.6 million, an 8% increase … over prior year net sales of $696.4 million" and called for a 28% increase in earnings per diluted share of $0.55 as compared to the same period in the prior year. Again, nearly half of the Company's net sales were generated in the United States segment $342.3 million. Also included

in the press release were financial projections for the Company's 2016 fiscal year in which Individual Defendants forecasted expectations of a net range of $2.90 billion to $3.04 billion in total net sales. This proposal indicates a 7% to 12% increase in net sales compared to fiscal year 2015.

52.     About one week after announcing Hain Celestial's financial results, on February 9, 2016, the Company filed its Quarterly Report on Form 10-Q for the quarter ended December 31, 2015, with the SEC. Signed and certified pursuant to SOX by defendants Simon and Conte, the Form 10-Q confirmed the operating and financial results previously announced by the defendants in the press release. Again, the Form 10-Q identified policies relating to revenue recognition and sales and promotional incentives as critical accounting estimates.

53.     On May 4, 2016, the Company issued a press release and filed a Current Report on Form 8-K with the SEC. The Individual Defendants once again boasted record sales for the quarter ended March 31, 2016. Indicated as performance highlights, the Individual Defendants claim that the Company had net sales of $750 million, a 13% increase over the prior year period of $662.7 million in net sales. Net income for the nine months ended March 31, 2016, accordingly increased from $96.8 million in 2015 to $137.2 million in 2016. Additionally, earnings per diluted share increased 47% reaching $0.47 over the prior year period.

54.     The press release included increased financial projections for fiscal 2016. In particular, the Company stated that total net sales would increase 9% to 10% over the prior year period indicating a predicted range of $2.946 billion to $2.966 billion and earnings per diluted share increase of 6% to 9% at a range of $2.00 to $2.04. In the press release, defendant Simon ascribed these strong financial results to "[t]he diversification of our product portfolio with leading organic, natural and better-for-you brands around the world, combined with our team's

solid execution of our operational initiatives [which] fueled our financial performance."
Defendant Simon also applauded the Company's United States performance which reported net
sales of $351.9 million for the third quarter, a growth of 2.7% over the prior year period, stating,
"We are extremely pleased with our US results where we returned to growth in the third quarter
and expect these trends to continue."

55.     On May 10, 2016, Hain Celestial filed its Quarterly Report on Form 10-Q for the
quarter ended March 31, 2016 with the SEC.  This was the last time that the Company would
timely file its quarterly report.  Defendants Simon and Conte signed and certified, pursuant to
SOX, that the financial information contained within the Form 10-Q was accurate.  The Form 10-
Q reaffirmed the financial results announced in the Company's press release and yet again
specified that revenue recognition, sales, and promotional incentives "have been identified as
critical to our business operations and understanding the results of our operations."

### THE FALSE AND MISLEADING 2015 PROXY

56.     On October 9, 2015, defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil,
Shapira, and Zilavy caused Hain Celestial to file with the SEC its Proxy Statement on Schedule
DEF 14A in connection with the 2015 Annual Meeting of Stockholders, held on November 19,
2015 (the "2015 Proxy").  In the 2015 Proxy, defendants solicited stockholder votes to, among
other things, reelect defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy
to the Board.  Defendants issued materially misleading statements with respect to these solicited
votes.

57.     In support of reelecting defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil,
Shapira, and Zilavy, the 2015 Proxy claimed: (i) that the Board was engaged in active risk
oversight of the Company, including focusing on the risk in the Company's operations and

finances; (ii) the Audit Committee exercised oversight of the Company's financial statements; and (iii) that Hain Celestial's financial statements were accurate, and therefore appropriate for the Board's approval in the Company's annual report. In particular, the 2015 Proxy stated:

### Board's Role in Risk Oversight

Management is responsible for the Company's day-to-day risk management and *the Board's role is to engage in informed oversight of, and provide direction with respect to, such risk management*. In its oversight role regarding risk management, the Board focuses on understanding the nature of our enterprise risks, including risk in our operations, finances and the strategic direction of the Company and reviews and approves the Company's Annual Operating Plan. The Annual Operating Plan addresses, among other things, the risks and opportunities facing the Company. The Board receives regular updates regarding the Company's progress against its Annual Operating Plan and reviews quarterly updates regarding the related risks and opportunities. *The Board maintains control over significant transactions and decisions that require Board approval for certain corporate actions (including material acquisitions or divestitures).*

The Board has delegated certain risk management oversight responsibilities to the Audit Committee and the Compensation Committee.

*As part of its responsibilities as set forth in its charter, the Audit Committee is responsible for discussing with management the Company's policies and guidelines regarding risk assessment and risk management as well as the Company's major financial risk exposures and the steps management has taken to monitor and control those exposures*.

\* \* \*

### The Audit Committee

*The Audit Committee's principal duties include* appointing, retaining and terminating our registered independent accountants, overseeing the work of and evaluating the independence of the registered independent accountants, reviewing with the registered independent accountants their reports *as well as oversight responsibilities with respect to our financial statements, disclosure practices, accounting policies, procedures and internal controls.*

\* \* \*

In addition to fulfilling its responsibilities as set forth in its charter and further described above in "Board of Directors and Corporate Governance – Committees of the Board – The Audit Committee," *the Audit Committee has reviewed the Company's audited financial statements for fiscal year 2015*. Discussions about the Company's audited financial statements included its independent registered

public accounting firm's judgments about the quality, not just the acceptability, of the Company's accounting principles and underlying estimates used in its financial statements, as well as other matters, as required under Public Company Accounting Oversight Board Auditing Standard No. 16, *Communications with Audit Committees* ("*AS 16*") and by our Audit Committee Charter. ***In conjunction with the specific activities performed by the Audit Committee in its oversight role, it issued the following report:***

1. ***The Audit Committee has reviewed and discussed the audited financial statements as of and for the year ended June 30, 2015 with the Company's management.***

2. The Audit Committee has discussed with the independent registered public accounting firm the matters required to be discussed by AS 16.

3. The Audit Committee has received from the independent registered public accounting firm the written disclosures and the letter required by applicable requirements of the Public Company Accounting Oversight Board regarding the independent registered public accounting firm communications with the Audit Committee concerning independence, and the Audit Committee has discussed with the independent registered public accounting firm their independence from the Company.

Based on the reviews and discussions referred to in paragraphs (1) through (3) above, the ***Audit Committee recommended to the Board of Directors, and the Board of Directors has approved, that the audited financial statements be included in the Company's Annual Report on Form 10-K for the fiscal year ended June 30, 2015 for filing with the SEC.***

58.     The statements described above are materially misleading. The Board and Audit Committee did not exercise active and appropriate oversight over the Company's risk management and financial statements. Most importantly, the Company was not correctly accounting for its revenue and therefore, its financial statements were not appropriate to include in the Company's annual report. Defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy were negligent in including making these misleading statements in the 2015 Proxy. Plaintiff disclaims any claim of fraud or knowing wrongdoing in connection with the 2015 Proxy.

59.     The 2015 Proxy harmed Hain Celestial by interfering with the proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for directors.  As a result of the Individual Defendants' misleading statements in the 2015 Proxy, Hain Celestial's stockholders voted to reelect defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy to Hain Celestial's Board.

## THE TRUTH IS SLOWLY, AND ONLY PARTIALLY, REVEALED

60.     On August 15, 2016, nearly two months after the fiscal 2016 year end, Hain Celestial filed a Current Report on Form 8-K in conjunction with a press release issued on behalf of Hain Celestial that same day.  Hain Celestial's press release hinted at the Company's accounting misstatements and poor internal controls:

> [Hain Celestial] announced today that it will delay the release of its fourth quarter and fiscal year 2016 financial results. During the fourth quarter, the Company identified concessions that were granted to certain distributors in the United States. The Company is currently evaluating whether revenue associated with those concessions was accounted for in the correct period and is also currently evaluating its internal control over financial reporting.

> Previously, the Company has recognized revenue pertaining to the sale of its products to certain distributors at the time the products are shipped to such distributors. The Company is evaluating whether the revenue associated with the concessions granted to certain distributors should instead have been recognized at the time the products sell through its distributors to the end customers…. There can be no assurance that the Company will complete the preparation and filing of the Form 10-K within the extension period…. Separately, the Company does not expect to achieve its previously announced guidance for fiscal year 2016.

61.     The August 15, 2016 press release tried to downplay the true disaster in Hain Celestial's previous financial statements by claiming that it was only "evaluating" the effects of the misreporting, and that the errors would not "impact the total amount of revenue ultimately recognized by the Company."  Nevertheless, the public reacted quickly to the Company's disclosures, causing a 26.3% collapse in Hain Celestial's share price, a market

capitalization drop of $1.4 billion. Quick to report on the accounting fraud, *Forbes* noted that "the news was bad enough to knock $1.6 billion off of Hain's market cap overnight" in its August 16, 2016 article, "Accounting Problems Eat at Hain Celestial Sending Stock For 26% Plunge."

62. Upon this news, stock analysts reevaluated Hain Celestial's position in which many investment firms were "firing off downgrades on Hain Celestial (HAIN -27%) after the company delayed its annual filing and issued a weak outlook," according to Seeking Alpha's August 16, 2016 article titled, "Investment Firms Sent Scrambling After Hain Celestial Bombshell." Specifically:

- Atlantic Securities and Piper Jaffray both moved to Underweight from Neutral.

- BAML [Bank of America Merrill Lynch] lowered its rating to Underperform from Buy.

- Wedbush lowered its rating to Neutral and assigns a $37 price target.

63. On August 30, 2016, Hain Celestial filed a Notification of Late Filing on Form 12b-25 informing the SEC that the Company would be unable to file its annual report on Form 10-K for the year ended June 30, 2016, by the filing deadline. Hain Celestial repeated its claim that the filing is late because that "The Company is currently evaluating whether the revenue associated with those concessions was accounted for in the correct period and is also currently evaluating its internal control over financial reporting." Hain Celestial also revealed that "the Company does not anticipate filing the Form 10-K within the fifteen-day period provided by Rule 12b-25."

64. Due to Hain Celestial's inability to file its annual report on Form 10-K for the year ended June 30, 2016, the Company received a letter from the Nasdaq Stock Market, Inc. ("NASDAQ") dated August 31, 2016, the letter stated that the Company is non-compliant with NASDAQ. The Company revealed on November 3 that it submitted its plan to regain

compliance with NASDAQ on October 31, 2016, and on November 2, 2016, NASDAQ granted

the Company an extension, through February 27, 2017, to file its reports with the SEC. Hain

Celestial's communications with the SEC and remediation plan revealed that the errors in the

Company's financials were worse than initially let on and could take a significant time to fix.

65. On November 16, 2016, Hain Celestial issued a press release entitled "Hain

Celestial Announces Completion of Independent Audit Committee Review." This press release

contained the supposed results of the Audit Committee's investigation into the Company's

financial statements. In particular, the press release claimed, "[t]he [Audit Committee] review,

which was extensive, found no evidence of intentional wrongdoing in connection with the

Company's financial statements." Of the results of the Audit Committee investigation, defendant

Simon stated:

> Hain Celestial is committed to transparency of our financial reporting, and we are
> taking concrete measures to remediate as well as strengthen our internal controls.
> We are extremely pleased that the Company can now move forward with its
> reporting process as we put these challenges behind us.

66. Chairman of the Audit Committee, defendant Heyer stated "[t]he Audit

Committee is pleased to conclude our thorough review with independent counsel.... The Board

of Directors believes this is an important step toward releasing the Company's financial results."

67. The results of the Audit Committee investigation were farcical on their face.

Despite the Audit Committee somehow completing its investigation, the Company's internal

accounting review and audit process continued.

68. In fact, this review would continue for at least another five months. During that

time, Hain Celestial announced that the review of the Company's financial statements was much

broader than initially claimed. On February 10, 2017, three months after the Audit Committee

somehow concluded its investigation, the Company again filed a Notification of Late Filing on Form 12b-25 after it could not file its quarterly financial report.

69. On November 16, 2016, the Company announced the completion of the independent review conducted by the Audit Committee, which found no evidence of intentional wrongdoing in connection with the Company's financial statements, and that the Company would not be in a position to release financial results until the completion of its internal accounting review and audit process. *Although the initial* focus of the Company's internal accounting review pertained to the evaluation of the timing of the recognition of the revenue associated with the concessions granted to certain distributors, *the Company subsequently expanded its review to perform an analysis of previously-issued financial information in order to identify and assess any potential errors, which is ongoing*.

70. In addition, and again despite the Audit Committee's finding of no wrongdoing, the Form 12b-25 revealed that the SEC had begun its own investigation into the Company. In particular, concerning the SEC's investigation, the Form 12b-25 stated:

> Separately, the Company voluntarily contacted the Securities and Exchange Commission (the "SEC") in August to advise it of the Company's delay in the filing of its periodic reports and the performance of the independent review conducted by the Audit Committee. The Company has continued to provide information to the SEC on an ongoing basis, including, among other things, the results of the independent review conducted by the Audit Committee as well as information regarding the matters described above. *The SEC has issued a formal order of investigation and, pursuant to such order, the SEC issued a subpoena to the Company seeking relevant documents. The Company is in the process of responding to the SEC's requests for information and intends to cooperate fully with the SEC.*

71. The Company did not file its corrected financial results by February 27, 2017, as required by the SEC. On February 28, 2017, NASDAQ informed Hain Celestial that it was not in compliance with listing requirements and therefore its stock was subject to delisting. The Company stated that it intends to request a hearing with the NASDAQ Hearings Panel to present

a plan to regain compliance.  Notably, Hain Celestial said that it will ask for an extension of up to 360 days from when its annual report was originally due to regain compliance.  Thus, the Company may not file corrected financial statements until August 2017.

<u>REASONS THE STATEMENTS WERE IMPROPER</u>

72.     The statements contained the Company's press releases and SEC filings were improper when made because the Individual Defendants knowingly failed to disclose the following:

(a)     Hain Celestial had been incorrectly accounting for customer concessions as revenue which inflated the Company's past and projected earnings;

(b)     Hain Celestial's internal controls were ineffective, which resulted in unreliable financial reports;

(c)     The Company's financial statements would likely need to be restated; and

(d)     Hain Celestial was not on track to achieve the strong financial results that defendants projected throughout fiscal year 2016.

**THE INDIVIDUAL DEFENDANTS FAIL TO HOLD AN ANNUAL MEETING OF STOCKHOLDERS IN VIOLATION OF THE BY-LAWS AND DELAWARE LAW**

73.     Under Article II, section 2 of the Company's Amended and Restated By-Laws, titled "Annual Meetings," the Board is required to designate a time for "[t]he ***annual*** meeting of the stockholders."  Further, Section 211 requires the annual stockholders meeting to be held within thirteen months of the previous meeting.

74.     To date, the Company still has not held its Annual Meeting of Stockholders for 2016.  In fact, the last time the Company held its Annual Meeting of Stockholders was on November 19, 2015, more than fifteen months ago.  Thus, Hain Celestial is in violation of its By-Laws and Delaware Law, wrongfully denying the Company's stockholders their important rights

to voice their frustrations at an annual meeting or by withholding their votes for the directors that have breached their fiduciary duties.

75. This failure to hold an Annual Meeting of Stockholders is particularly egregious here given the large amount of "withheld" votes at the previous meeting and the misleading 2015 Proxy.

## DAMAGES TO HAIN CELESTIAL CAUSED BY THE INDIVIDUAL DEFENDANTS

76. As a result of the Individual Defendants' improprieties, Hain Celestial disseminated improper, public statements concerning the Company's revenues. These improper statements have devastated Hain Celestial's credibility as reflected by the Company's $2.2 billion market capitalization loss.

77. Hain Celestial's performance issues also damaged its reputation within the business community and in the capital markets. In addition to price, Hain Celestial's current and potential customers consider a company's ability to accurately value its business prospects and evaluate sales and growth potential. Businesses are less likely to award contracts to companies that are uncertain about their own financial conditions and operations. Given the substantial market capitalization loss Hain Celestial incurred as a result of the improper statements, Hain Celestial's ability to raise equity capital or debt on favorable terms in the future is now seriously impaired. In addition, the Company stands to incur higher marginal costs of capital and debt because the improper statements and misleading projections disseminated by the Individual Defendants have materially increased the perceived risks of investing in and lending money to the Company.

78. Further, as a direct and proximate result of the Individual Defendants' actions, Hain Celestial has expended, and will continue to expend, significant sums of money. Such expenditures include, but are not limited to:

(a)     costs incurred from defending and paying any settlement in the federal Securities Class Actions;

(b)     costs incurred from investigating the errors and likely restating the Company's financial statements;

(c)     costs incurred from devising remediation plans to submit to the SEC; and

(d)     costs incurred from compensation and benefits paid to the defendants who have breached their duties to Hain Celestial.

## CLASS ACTION ALLEGATIONS

79. Plaintiff brings certain claims in this action on her behalf and as a class action on behalf of all stockholders of Hain Celestial except the Individual Defendants and any person, firm, trust, corporation, or other entity related to, or affiliated with, any Individual Defendant (the "Class").

80. This action is properly maintainable as a class action.

81. The Class is so numerous that joinder of all members is impracticable. According to Hain Celestial's last financial statement filed with the SEC, the Company's Quarterly Report on Form 10-Q for the period ended March 31, 2016, there were over 103 million shares of Hain Celestial stock outstanding as of May 2, 2016. Upon information and belief, there are thousands of members of the Class.

82. There are questions of law and fact which are common to the Class, including, but not limited to, whether the Director Defendants should be held liable for failing to set a time and

date for, and failing to hold, an Annual Meeting of Stockholders since November 19, 2015, and whether plaintiff and the Class are entitled to an order compelling the Director Defendants to convene and hold an Annual Meeting of Stockholders.

83.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

84.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual Class members that would establish incompatible standards of conduct for the Individual Defendants.

85.     The Individual Defendants have acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief and/or corresponding declaratory relief is appropriate respecting the Class as a whole.

86.     The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

87.     Plaintiff brings this action derivatively in the right and for the benefit of Hain Celestial to redress injuries suffered, and to be suffered, by Hain Celestial as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. Hain Celestial is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on

this Court that it would not otherwise have.

88.     Plaintiff will adequately and fairly represent the interests of Hain Celestial in enforcing and prosecuting its rights.

89.     Plaintiff was a stockholder of Hain Celestial at the time of the wrongdoing complained of, has continuously been a stockholder, and is a current Hain Celestial stockholder.

90.     The current Board of Hain Celestial consists of the following eight individuals: defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

91.     Defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy are responsible for the negligently made statements in the materially misleading 2015 Proxy.  It is against public policy to indemnify individuals for violations of section 14a of the Exchange Act. Accordingly, an indemnification provided by the Company to defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy does not protect them for violations of section 14a in the 2015 Proxy.  Accordingly, defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy face a substantial likelihood of liability, excusing a demand.

92.     Defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy all made improper statements and approved additional improper statements in the Company's public statements, including its SEC filings, concerning Hain Celestial's revenue recognition and internal controls.  Because defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy face a substantial likelihood of liability for making and approving the improper statements, demand upon them is futile.

93. Audit Committee Defendants Berke, Heyer, Shapira, and Zilavy, as members of the Audit Committee, were responsible under the Audit Committee Charter in effect during the relevant period for reviewing and approving quarterly and annual financial statements, earnings press releases, and Hain Celestial's internal controls over financial reporting. Despite these duties, the Audit Committee Defendants knowingly or recklessly reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance. The Audit Committee Defendants also reviewed and approved Hain Celestial's ineffective internal controls over financial reporting.

94. In fact, the 2015 Proxy specifically states multiple times that the Audit Committee review the Company's financial statements and recommend their approval in Hain Celestial's annual report. The 2015 Proxy also stated that the Board approved the inclusion of the incorrect financial statements in the Company's annual report. In particular, on behalf of defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy, the 2015 Proxy substantiated that "the Audit Committee has reviewed the Company's audited financial statements for fiscal year 2015" and "…recommended to the Board of Directors, and the Board of Directors has approved, that the audited financial statements be included in the Company's Annual Report on Form 10-K for the fiscal year ended June 30, 2015 for filing with the SEC."

95. The 2015 Proxy also highlighted the Board's oversight of the Company's operations, risk, and controls. In particular, it states, "The Board receives regular updates regarding the Company's progress against its Annual Operating Plan and reviews quarterly updates regarding the related risks and opportunities. The Board maintains control over significant transactions and decisions that require Board approval for certain corporate actions." In addition, the 2015 Proxy states, "As part of its responsibilities as set forth in its charter, the

Audit Committee is responsible for discussing with management the Company's policies and guidelines regarding risk assessment and risk management as well as the Company's major financial risk exposures and the steps management has taken to monitor and control those exposures." As stated above, the 2015 Form 10-K explained that policies pertaining to revenue recognition and sales and promotion incentives are "critical" to the Company, and thus would fall under the Audit Committees purview of major financial risk exposure. Accordingly, defendants Berke, Heyer, Shapira, and Zilavy face a sufficiently substantial likelihood of liability for breach of their fiduciary duty of loyalty and good faith. Demand upon these defendants is futile.

96.    Defendants Meltzer will not initiate litigation against defendant Simon due to the work that he has provided him personally and through his control of Hain Celestial. Defendant Meltzer was a partner at the law firm Cahill Godron & Reindel LLP ("Cahill"). While Meltzer was a partner at Cahill, Cahill represented both Hain Celestial and defendant Simon. Defendant Meltzer left Cahill and became a partner at the law firm DLA Piper, a position he retains to this day. DLA Piper is now Hain Celestial's regular outside counsel. In addition, DLA Piper has represented Mistral Equity Partners LLC ("Mistral"), which was founded by defendant Heyer and which defendant Simon is a fund Board manger. DLA Piper advised Mistral on its sale of Country Pure Food, Inc. for roughly $100 million, among other representations. In addition, the Board had previously admitted that defendant Meltzer is not independent in its public filings with the SEC.

97.    Defendant Heyer will not initial litigation against defendant Simon due to his sense of owingness to Simon and their longtime business connections. Defendant Heyer was the Founder, Partner, and Managing Director of The Argosy Group L.P. ("Argosy"). Argosy served

as the investment bank for Hain Celestial's predecessor organization. Argosy was acquired by CIBC World Markets Corp. ("CIBC"). After the acquisition, CIBC advised Hain Celestial on a number of transactions. In particular, CIBC was Hain Food Group, Inc.'s ("HFG") financial adviser for its acquisition of The Estee Corporation and Westbrae Natural Inc. In addition, CIBC was the underwriter for HFG's offering of 2,825,000 shares of common stock.

98.     Defendant Simon's control of the Company and the Board is evident by his placement of family members at Hain Celestial. Defendant Simon's spouse, Daryl Simon, has been the Director of International Sales of the Company since September 1996. Defendant Simon's brother-in-law, Geoffrey Goldberg, currently serves as Vice President – Corporate Services and has been employed by the Company since June 2000.

99.     On or around when the Company announced it would have to delay its annual report in August 2016, the Audit Committee began an investigation into Hain Celestial's revenue recognition practices. Just three months later, on November 16, 2016, the Company announced that the Audit Committee completed its investigation into the revenue recognition practices and found no evidence of "intentional" wrongdoing. The Audit Committee came to this conclusion even though the Company expanded the scope of its review of its previous financial statements and still, five months after the Audit Committee's conclusion, Hain Celestial has been unable to file its annual or quarterly reports. Further, while the Audit Committee found no intentional wrongdoing, it made no comments about whether there were negligence or reckless actions or who bears responsibility for the Company's inadequate internal controls. Indeed, the Audit Committee's failure to disclaim any wrongdoing other than intentional supports the conclusion that there was liability creating activities which led to the improper statements and inadequate internal controls. Nevertheless, the Board has failed to bring litigation against any of those

responsible for the massive breakdown of the Company's controls and the improper statements. Plaintiff now seeks to pursue an action based on these same instances of wrongdoing. As Vice Chancellor Stephen P. Lamb explained, "it would be odd if Delaware law required a stockholder to make demand on the board of directors before suing on those very same theories of recovery." *Conrad v. Blank*, 940 A.2d 28, 38 (Del. Ch. 2007). Due to the Audit Committee (which is half the Board) and Board's inaction in the face of this identified wrongdoing, demand upon the Board is excused.

100. Plaintiff has not made any demand on the other stockholders of Hain Celestial to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a) Hain Celestial is a publicly held company with over 103 million shares outstanding as of May 2, 2016, and thousands of stockholders;

(b) making demand on such a number of stockholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of stockholders; and

(c) making demand on all stockholders would force plaintiff to incur excessive expenses, assuming all stockholders could be individually identified.

## <u>COUNT I</u>

**Derivatively Against the Individual Defendants for Breach of Fiduciary Duty**

101. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

102. The Individual Defendants owed and owe Hain Celestial fiduciary obligations. By reason of his fiduciary relationships, the Individual Defendants owed and owe Hain Celestial the highest obligation of due care, loyalty, and good faith.

103. The Individual Defendants, and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty. More specifically, the Individual Defendants violated their duty of good faith by consciously failing to prevent to the Company from engaging in the unlawful acts complained of herein.

104. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Hain Celestial has sustained significant damages, as alleged herein. As a result of the misconduct alleged herein, these defendants are liable to the Company.

105. As a direct and proximate result of the Individual Defendants breaches of their fiduciary duties, Hain Celestial has sustained significant damages. As a result of the misconduct alleged herein, these defendants are liable to the Company.

106. Plaintiff, on behalf of Hain Celestial, has no adequate remedy at law.

## COUNT II

**Derivatively Against the Individual Defendants for Waste of Corporate Assets**

107. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

108. As a result of the misconduct described above, the Individual Defendants wasted corporate assets: (i) by failing to maintain sufficient internal controls over financial reporting to prevent the issuance of improper financial results that will need to be restated; (ii) by failing to properly consider the interests of the Company and its public stockholders; (iii) by failing to

conduct proper supervision; and (iv) by paying undeserved incentive compensation to the Individual Defendants.

109.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

110.    Plaintiff, on behalf of Hain Celestial, has no adequate remedy at law.

## COUNT III

**Derivatively Against the Individual Defendants for Unjust Enrichment**

111.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

112.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Hain Celestial.  The Individual Defendants were unjustly enriched as a result of the salaries, bonuses, and other forms of compensation remuneration they received while breaching fiduciary duties owed to Hain Celestial.

113.    Plaintiff, as a stockholder and representative of Hain Celestial, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

114.    Plaintiff, on behalf of Hain Celestial, has no adequate remedy at law.

## COUNT IV

**Derivatively Against Defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy for Violation of Section 14(a) of the Exchange Act**

115.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

116.    The section 14(a) Exchange Act claims alleged herein are based solely on negligence.  They are not based on any allegation of reckless or knowing conduct by or on behalf of defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy.  The section 14(a) claims alleged herein do not allege and do not sound in fraud.  Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these non-fraud claims.

117.    Defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy negligently issued, caused to be issued, and participated in the issuance of materially false and misleading written statements to stockholders that were contained in the 2015 Proxy.  The 2015 Proxy contained proposals to the Company's stockholders that they vote to reelect the members of the Board.  The 2015 Proxy, however, misrepresented and failed to disclose and explain: (i) Hain Celestial had significant deficiencies with its revenue recognition practices; and (ii) the Company's internal controls were defective.   By reasons of the conduct alleged herein, defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy violated section 14(a) of the Exchange Act.  As a direct and proximate result of these violations, stockholders voted in favor of reelecting defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy to the Board.  Defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy's reelection led the continuation of the wrongful practices described herein.

118.    Plaintiff, on behalf of Hain Celestial, thereby seeks relief for damages inflicted upon the Company in connection with the improper election of defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy based upon the false and misleading 2015 Proxy, and also seeks new director elections on the basis of a special proxy with appropriate corrective disclosures.

## COUNT V

**Directly and as a Class Action Against Defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy to Compel an Annual Meeting of Stockholders**

119.    Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

120.    The Company's last Annual Meeting of Stockholders was held on November 19, 2015.

121.    Pursuant to Section 211, Hain Celestial is required to hold a meeting of stockholders at least once every thirteen months. Further, pursuant to Article II, Section 2 of the By-Laws, the Company must hold its meeting of stockholders at least annually.

122.    As a result of the Individual Defendants' wrongdoing, defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy have failed to timely cause Hain Celestial to hold an Annual Meeting of Stockholders to elect directors, and there has been no action by written consent to elect the Company's directors in lieu of an annual meeting.

123.    To remedy defendants Simon, Berke, Heyer, Kelly, Meltzer, O'Neil, Shapira, and Zilavy's decision to cause Hain Celestial's foregoing violation of Delaware law and the Company's By-Laws, the Court should order the Board to promptly schedule, provide notice of, and hold an Annual Meeting of Stockholders.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands for judgment as follows:

A.    Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' violations of securities law, breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.      Ordering defendants to provide to plaintiff and the investing public accurate operation reports and financial statements for all previous quarters and years identified by as inaccurate;

C.      Ordering defendants to take whatever measures are reasonably necessary to ensure they publish timely and accurate operational reports and financial statements for all quarterly and annual periods going forward;

D.      Ordering defendants to convene and hold an Annual Meeting of Stockholders no later than sixty days from the date of the Order and designating the time and place of the annual meeting, as well as the form and timing of notice to be provided to Hain Celestial stockholders;

E.      Directing Hain Celestial to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Hain Celestial and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote the following corporate governance policies:

    1.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

    2.      a provision to permit the stockholders of Hain Celestial to nominate at least three candidates for election to the Board; and

    3.      a proposal to strengthen Hain Celestial's internal controls over financial reporting and specifically with respect to revenue recognition;

F.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting defendants' assets so as to assure that plaintiff on behalf of Hain Celestial has an effective remedy;

G.     Awarding to Hain Celestial restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

H.     Awarding to plaintiff reasonable attorneys' fees, consultant and expert fees, costs, and expenses; and

I.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 18, 2017

LAW OFFICES OF THOMAS G. AMON

/s/ THOMAS G. AMON
_____
THOMAS G. AMON

733 Third Avenue, Floor 15
New York, NY 10107
Telephone: (212) 810-2430
Facsimile: (212) 810-2427
E-mail: tamon@amonlaw.com

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
SHANE P. SANDERS
SCOTT F. TEMPLETON
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
        csmith@robbinsarroyo.com
        ssanders@robbinsarroyo.com
        stempleton@robbinsarroyo.com

1161130